UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIBERTY MUTUAL FIRE
INSURANCE COMPANY, LM
GENERAL INSURANCE COMPANY,
And SAFECO INSURANCE COMPANY
OF ILLINOIS

       Plaintiffs,

                                      Civil Case No. 20-13170

v.                              Honorable Linda V. Parker

MAPLE MANOR NEURO CENTER INC.,
STELLA EVANGELISTA, JOSE L.
EVANGELISTA,

       Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS (ECF NO. 20)

    This dispute arises from no-fault insurance benefits that Plaintiffs

(collectively, "Liberty Mutual") paid to Defendants for the treatment of its

insureds.  Liberty Mutual is an insurance company providing no-fault insurance

coverage in Michigan.  Defendants Stella Evangelista and Jose Evangelista own

Maple Manor Neuro Center Inc. ("Maple Manor").  On December 2, 2020, Liberty

Mutual filed a Complaint alleging that Defendants engaged in a scheme to submit

false and fraudulent medical records, bills, and invoices through interstate wires,

which sought payment for treatment and services from an unlicensed healthcare

provider.  (ECF No. 1.)  Liberty Mutual alleges that the Defendants' conduct

violates the federal Racketeer Influenced Corrupt Organizations Act ("RICO"), 18

U.S.C. § 1962(c) and (d), and state law.

Liberty Mutual asserts in its Complaint: (i) federal claims against Stella and

Jose Evangelista for violations of RICO and a RICO conspiracy (Counts I and II)[1];

(ii) a common law claim against all Defendants (Count III); (iii) a payment under

mistake of fact claim against Maple Manor (Count IV); (iv) an unjust enrichment

claim against all Defendants (Count V); and (v) a request for declaratory relief

(Count VI).[2]  (ECF No. 1.)

On January 29, 2021, Defendants filed a motion to dismiss Liberty Mutual's

Complaint.  (ECF No. 20.)  The motion is fully briefed.  (ECF Nos. 21, 22.)

Finding the facts and legal arguments sufficiently presented in the parties' briefs,

the Court is dispensing with oral argument pursuant to Eastern District of

Michigan Local Rule 7.1(f).

## I.      Standard for Rule 12(b)(6) Motion

---

[1] 18 U.S.C. § 1962(c), and (d).

[2] Following Liberty Mutual's initiation of this lawsuit, Maple Manor filed a related complaint in state court seeking declaratory relief, which Liberty Mutual subsequently removed to federal court.  *Maple Manor Neuro Center Inc. v. Liberty Mutual Fire Insurance Company et al.*, Civil Case No. 20-cv-13288-LVP-KGA (E.D. Mich. 2020).  This Court dismissed the lawsuit with prejudice on December 23, 2021.  *Id.*, ECF No. 21.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . .." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The court may take judicial notice only "of facts which are not subject to reasonable dispute." *Jones v. Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)).

In addition to the pleading requirements set forth above, Federal Rule of Civil Procedure 9(b) requires "a party [t]o state with particularity the circumstances constituting fraud or mistake."  The pleading must "allege the time, place, and content of the alleged misrepresentation … the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 515 (6th Cir. 2007) (quotation marks omitted).  "Rule 9(b)'s 'particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior.'"  *United States ex rel. Prather v. Brookdale Senior Living Cmtys., Inc.*, 838 F.3d 750, 771 (6th Cir. 2016) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1313 (11th Cir. 2002), cert. denied, 549 U.S. 889 (2006)).

## II.    Factual Background

Liberty Mutual is an insurance company authorized to conduct business in Michigan.  (Compl. ¶¶ 8-11, ECF No. 1 at Pg ID 3.)  Maple Manor "billed Liberty for treatment that was not lawfully rendered to patients . . . ."  (*Id*. ¶ 15, Pg ID 4.)  As owners of Maple Manor, Stella and Jose Evangelista are responsible for the unlawful treatment of Liberty Mutual's insured customers.  (*Id*. ¶¶ 18, 21, Pg ID

4.)  Stella and Jose Evangelista are licensed medical professionals.  (*Id*. ¶ 66, Pg ID 14.)

On March 7, 2016, Marcus Evangelista incorporated Maple Manor under the laws of the State of Michigan.  (*Id*. ¶ 26, Pg ID 5.)  Maple Manor's Articles of Incorporation state that its purpose is to provide "therapy services such as physical therapy, occupational therapy, and speech therapy."  (*Id*. ¶ 27, Pg ID 5-6.)  On July 3, 2017, Maple Manor filed an Annual Report with the Michigan Department of Licensing and Regulatory Affairs ("LARA"), identifying the nature of business in which the corporation engaged in as a "medical office."  (*Id*. ¶ 28, Pg ID 6.)  Subsequent annual reports in 2018, 2019, and 2020 identify "therapy" or "therapy services" as the nature of the corporation's business.  (*Id*. ¶¶ 29-31, Pg ID 6.)  Further, Stella Evangelista has previously testified in court that Maple Manor is a healthcare provider that provides physical therapy, occupational therapy, and speech therapy.  (*Id*. ¶¶ 33-34, Pg ID 7.)  As a medical treatment provider, Maple Manor was therefore required to be licensed.  (*Id*. ¶¶ 35, 36, Pg ID 7-8.)  Prior to filing its Complaint, Liberty Mutual learned that Maple Manor was not licensed to provide the treatment that is at issue in this Complaint.  (*Id*. ¶ 36, Pg ID 8.)

The Michigan No-Fault Act provides for payment of medical and rehabilitative benefits for injured victims of motor vehicle accidents.  (*Id*. ¶ 37, Pg ID 8 (citing Mich. Comp. Laws § 500.3107(1)(a).)  However, "[o]nly treatment

6

that is 'lawfully render[ed]' is compensable under the No-Fault Act. Mich. Comp. Laws § 500.3157(1)." (*Id*. ¶ 39, Pg ID 8.)  Liberty Mutual alleges that Defendants' treatment of its insureds was not lawfully rendered and is therefore not reimbursable. (*Id*. ¶¶ 40, 54, 55, Pg ID 8, 9, 11, 12.)  Specifically, the Complaint cites *Cherry v. State Farm Mutual Automobile Insurance Company*, 489 N.W.2d 788 (Mich. App. 1992).[3] (*Id*. ¶ 40, Pg ID 8.)  Maple Manor billed Liberty Mutual for medical treatment to Liberty Mutual's insured clients without the required license to perform the services. (*Id*. ¶ 41, Pg ID 8-9.)

To explain the billing for unlawful treatment without a license, Liberty Mutual states:

> 42. Each bill submitted to Liberty Mutual by Maple Manor Neuro Center was submitted using a Health Insurance Claim Form ("HICF").
>
> 43. The American Medical Association ("AMA") publishes instructions for properly completing HICFs that were developed by the National Uniform Claim Committee ("NUCC").
>
> 44. The NUCC Reference Instruction Manual provides specific instructions detailing how healthcare providers must complete each HICF.
>
> 45. According to version 7.0 of the NUCC Reference Instruction Manual that was published in July 2019, Item

---

[3] The Michigan Court of Appeals held in *Cherry* "that only treatment lawfully rendered, including being in compliance with licensing requirements, is subject to payment as a no-fault benefit." *Cherry*, 489 N.W.2d at 790.  The *Cherry* court also held that "[t]he practice of medicine or the administering of medical treatment can be lawfully performed only by licensed physicians." *Id*.

> Number 31 of each HICF identifies "the Physician or Supplier"
> of the medical treatment and "refers to the authorized or
> accountable person and the degree, credentials, or title."

(*Id*. ¶¶ 42-45, Pg ID 9.)  Liberty Mutual then gives a specific example in which

Maple Manor is listed as the Physician or Supplier in Item Number 31.  (*Id*. ¶ 46,

Pg ID 9, 10.)  "The NUCC Reference Instruction Manual also instructs healthcare

providers such as [Maple Manor] that Item Number 33 of each HICF 'identifies the

provider that is requesting to be paid for the services rendered.'"  (*Id*. ¶ 47, Pg ID

10.)  In another example, Maple Manor is listed as the provider requesting to be

paid for services rendered in Item Number 33.  (*Id*. ¶ 48, Pg ID 10.)  The NUCC

Reference Instruction Manual also instructs healthcare providers to include the

federal taxpayer identification number (TIN) of the billing provider from Item

Number 33 in Item Number 25.  (*Id*. ¶ 49, Pg ID 10.)  In its final example, Liberty

Mutual shows that Maple Manor lists its TIN in Item Number 25.  (*Id*. ¶ 50, Pg ID

11.)  In sum, each HICF submitted by Maple Manor contains its name in Item

Numbers 31 and 33 and its TIN in Item Number 25.  (*Id*. ¶ 51, Pg ID 11.)  As such,

Maple Manor is the provider of the services rendered to Liberty Mutual's insured

clients.  (*Id*. ¶ 51, Pg ID 11.)

Defendants submitted bills and medical records warranting that such bills

and records related to lawfully rendered and licensed treatment of patients.  (*Id*. ¶

58, Pg ID 12.)  Maple Manor misrepresented that it was a licensed "medical

office" that could render the treatment of "therapy" despite its lack of licensure. (*Id*. ¶ 60, Pg ID 12-13.)  "Each claim for payment (and accompanying medical records) under Michigan's No-Fault Act submitted to Liberty Mutual by the defendants constitutes a misrepresentation because the treatment underlying the claim was not lawful . . . ."  (*Id*. ¶ 62, Pg ID 13.)  Based on the misrepresentation, Liberty Mutual paid over $449,970 to Maple Manor for the benefit of its owners Stella and Jose Evangelista.  (*Id*. ¶¶ 70, 72, Pg ID 15.)

The objective of the scheme "was to collect No-Fault payments to which the [D]efendants were not entitled because the medical services provided were not lawfully rendered."  (*Id*. ¶ 74, Pg ID 15.)  All the relevant documents to Liberty Mutual's claims, including medical records, HICFs, and requests for payment, traveled through interstate wires or the mail.  (*Id*. ¶ 77, Pg ID 16.)  Consequently, Defendants committed wire and mail fraud, as defined in 18 U.S.C. §§ 1341 and 1343.  (*Id*. ¶ 90, Pg ID 18.)  Defendants agreed to pursue the same objective.  (*Id*. ¶ 92, Pg ID 18.)

Liberty Mutual's Complaint references the treatment at issue with the patient's initials as set out in Exhibit 1.  (Compl. Ex. 1, ECF No. 1-2.)  The dates of service for the claims submitted to Liberty Mutual range from 2017 until 2019. (*Id*.)  In addition, Liberty Mutual's Complaint contains a chart explaining when,

how, and by whom the fraudulent medical records, invoices, and bills were faxed

or mailed to them in Exhibit 2.  (*Id.* Ex. 2, ECF No. 1-3.)

## II.    Law and Analysis

### A. Civil RICO Claims

Liberty Mutual alleges that Defendants violated 18 U.S.C. §§ 1962(c) and

(d).  These sections provide as follows:

> (c) It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign commerce,
> to conduct or participate, directly or indirectly, in the
> conduct of such enterprise's affairs through a pattern of
> racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to
> violate any of the provisions of subsection (a), (b), or (c)
> of this section.

18 U.S.C. § 1962(c), (d).  To establish a RICO violation, the plaintiff must

demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity."  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th

Cir. 2006) (quoting *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  To

establish a RICO conspiracy claim under subsection (d), the plaintiff "must

successfully allege all the elements of a RICO violation, as well as alleging 'the

existence of an illicit agreement to violate the substantive RICO provision.'"

*Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir.

2012) (quoting *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)).

10

Defendants maintain that this case is a simple "state-court billing dispute" that Liberty Mutual attempts to recast as a federal Civil RICO claim. (ECF No. 20-1 at Pg ID 191.) Defendants argue that Liberty Mutual fails to adequately plead a RICO claim concerning each element under § 1962(c). (ECF No. 20-1 at Pg ID 199-208.) The Court will address each element in turn.

### 1. *Racketeering Activity*

Defendants contend that Liberty Mutual's allegations are insufficient to establish that they engaged in the racketeering activity of mail or wire fraud because they do not meet the minimum particularity requirement under Rule 9(b). (ECF No. 20-1 at Pg ID 200 (quoting Fed. R. Civ. P. 9(b).) Defendants specifically contend that Liberty Mutual "fail[s] to identify a single person at [Maple Manor] who allegedly communicated anything to [Liberty Mutual], let alone *what* specifically was communicated, and *when and where* it was communicated." (*Id*. at 206 (emphasis in original.))

To establish a pattern of racketeering activity, Liberty Mutual must show that Defendants committed at least two predicate racketeering acts within ten years of each other that demonstrate criminal conduct of a continuing nature. 18 U.S.C. § 1961(5). "The alleged predicate acts may consist of offenses 'which are indictable' under any of a number of federal statutes, including the mail (18 U.S.C. § 1341) and wire fraud statutes (18 U.S.C. § 1343)." *Moon v. Harrison Piping*

11

*Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (citing 18 U.S.C. § 1961(1)).  As set forth earlier, Rule 9(b) imposes heightened pleading requirement for fraud claims. To satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b), plaintiff must allege the time, place, and contents of the misrepresentation.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984).

Liberty Mutual generally alleges that the racketeering activity consists of Defendants, through mail and fax, submitting false and fraudulent claims for unlawfully rendered treatment.  Liberty Mutual's Complaint explains when, how, and by whom the fraudulent medical records, invoices, and bills in Exhibit 2 were faxed or mailed to Liberty Mutual.  (Compl. Ex. 2, ECF No. 1-3.)  According to Liberty Mutual, Defendants' misrepresentation was that the treatment was lawful when, in fact, it was provided by Maple Manor, an unlicensed healthcare provider or facility.  (Compl. ¶¶ 1, 52, 55, 87, ECF No. 1 at Pg ID 1, 11, 12, 17.)  Liberty Mutual further alleges that every time the Defendants submitted their claims for no-fault benefits, they were warranting that they related to lawfully rendered and licensed treatment of patients.  (*Id*. ¶ 58, Pg ID 12.)  However, Maple Manor did not possess a license for the medical services it provided.  (*Id*. ¶ 60, Pg ID 12-13.) Stella and Jose Evangelista "submitted, or caused to be submitted, . . . ." the false or fraudulent records.  (*Id*. ¶ 105, Pg ID 21.)  Accordingly, the Court concludes

that Liberty Mutual has adequately pled facts to establish at least two predicate acts of mail fraud with the requisite particularity.

However, it is unclear whether Defendants' acts are indictable, as it is not clear at this stage whether the medical treatment at issue was *rendered* to patients by unlicensed individuals or entities.  Liberty Mutual cites *Cherry* to support its contention that treatment was rendered without the required license and was therefore not lawfully rendered.  (*Id.* ¶¶ 40, 41, Pg ID 8-9 (citing *Cherry*, 498 N.W.2d 788).)  However, a court in this district interpreting *Cherry* held that it "did not impose a licensing requirement in all instances; it merely states that licensing requirements must be met if a license is required to provide certain services." *Allstate Ins. Co. v. Frankel*, 259 F.R.D. 274, 279 (E.D. Mich. 2009).  In *Frankel*, an insurer filed a complaint against an unlicensed medical facility to determine if their services were "lawfully rendered" under the Michigan no-fault act.  *Id.* at 276.  The insurer argued that both the facilities and the individuals rendering services must have proper license for them to be considered as lawfully rendered under the no-fault act.  *Id.* at 279.  The *Frankel* court, however, disagreed and determined that the defendants were "entitled to no-fault insurance benefits: (a) if the services they provided were reasonably necessary for the insureds' care, recovery, or rehabilitation; and (b) the services provided were: (i) within the scope of the [facilities'] operating licenses; (ii) rendered by individuals who did not need

13

a license to provide the services; or (iii) rendered by individuals who had the requisite license." *Id.* The court held that if an "individual lawfully rendered services that the facility itself could not render because it required a license to perform that service, [the insurer] must pay the individual who lawfully rendered services, not the facility." *Id.*

Defendants assert in their motion to dismiss that Maple Manor is merely a billing agent which bills on behalf of licensed medical providers. (ECF No. 20-1 at Pg ID 193.) Liberty Mutual responds that this is an improper "fact" to consider in deciding the motion as the Complaint plainly alleges that Maple Manor billed for performing treatment at issue. [4] (ECF No. 21 at Pg ID 270-71.) Assuming the

---

[4] Defendants argue that Liberty Mutual does not have standing to challenge Maple Manor's status as a corporation or its licensure. (ECF No. 20-1 Pg ID 214 (citing *Sterling Heights Pain Mgmt., PLC v. Farm Bureau Gen. Ins. Co. of Michigan*, 966 N.W.2d 456 (Mich. App. 2020).) In *Sterling*, an insurance company challenged a provider's incorporation status as a professional legal corporation, requiring all members and managers to be licensed to render the same professional service, when two members listed on a LARA report were found to not be licensed physicians. *Sterling*, 966 N.W.2d at 457. The plaintiff responded that all the treatment rendered was performed by licensed physicians. *Id.* at 458. The Michigan Court of Appeals held that the plaintiff had no standing to challenge whether an entity is properly incorporated and that "only the Attorney General has standing to bring claims alleging incorporation defects." *Id.* at 460; *see also Miller v. Allstate Ins. Co.*, 751 N.W.2d 463 (Mich. 2008). The court noted that the insurance company did not dispute whether the facility was licensed to render treatment or whether a licensed physician provided treatment to the insured person. *Id.* As such, *Sterling* is not on point. Liberty Mutual's Complaint does not allege that Maple Manor is improperly incorporated; it instead asserts that Maple Manor billed Liberty Mutual for unlicensed treatment of its insureds.

factual allegations in the Complaint are true—which the Court must do in deciding Defendants' motion— Liberty Mutual has pled sufficient facts to meet the racketeering element.  However, *Frankel* leads the Court to understand that Liberty Mutual's claims fail if the treatment was rendered by a licensed provider and billed by Maple Manor.

## 2. *Enterprise*

Liability under § 1962(c) requires proof of the existence of two distinct entities: "(1) a 'person' and (2) an 'enterprise' that is not simply the same person referred to by a different name."  *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 161 (2001).  The Sixth Circuit explained the distinctness requirement as follows:

> A RICO 'person' can be either an individual or a corporation. [18 U.S.C. §] 1961(3).  A RICO 'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'  *Id.* § 1961(4).  The enterprise itself is not liable for RICO violations; rather, the 'persons' who conduct the affairs of the enterprise through a pattern of racketeering activity are liable.

*In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 490 (6th Cir. 2013) (citing *United States v. Philip Morris USA, Inc.,* 566 F.3d 1095, 1111 (D.C.Cir.2009)).  "[I]ndividual defendants are always distinct from corporate enterprises because they are legally distinct entities, even when those individuals own the corporations or act only on their behalf."  *Id*. at 492.

15

Defendants argue that Liberty Mutual must allege the existence of an organization with participants other than the named defendants. (ECF No. 20-1 at Pg ID 201 (citing *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1483 (6th Cir. 1989) (finding that the plaintiff failed to meet the enterprise element of a RICO claim when she alleged that an individual was both the person and enterprise for purposes of her RICO claim.) Liberty Mutual responds that its "Complaint names [Maple Manor], [as] a legal entity incorporated under the laws of the State of Michigan, as the RICO enterprise."[5] (ECF No. 21 at Pg ID 276-77; *see also* ECF No. 21 at Pg ID 277 n.3.) The Court agrees with this contention that Liberty Mutual has named Maple Manor, a formal legal entity, as the enterprise in which persons, Stella and Jose Evangelista, conducted the alleged RICO prohibited behavior. Moreover, Liberty Mutual's RICO claim is against Stella and Jose Evangelista. (*See* Compl. ¶¶ 99-108, ECF No. 1 at Pg ID 19-21.) In *Cedric Kushner Promotions*, the Supreme Court noted the following regarding distinctness:

> linguistically speaking, the employee and the corporation are different 'persons,' even where the employee is the corporation's sole owner. After all, incorporation's basic purpose is to create a distinct legal entity, with legal rights,

---

[5] Liberty Mutual also notes that it is not alleging an association-in-fact. (ECF No. 21 at Pg ID 276-77.) *See* 18 U.S.C. § 1961(4) (An enterprise under the Act "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity.")

16

> obligations, powers, and privileges different from those of the
> natural individuals who created it, who own it, or whom it
> employs.

*Cedric Kushner Promotions Ltd.*, 533 U.S. at 159.  Liberty Mutual has pled

sufficient facts to show the existence of persons distinct from an enterprise.

### 3.  *"Conducting the Affairs" of the Enterprise*

To support a RICO violation, "[a] defendant's participation must be in the

conduct of the affairs of a RICO enterprise, which ordinarily will require some

participation in the operation or management of the enterprise itself."  *Stone v.

Kirk*, 8 F.3d 1079, 1091 (6th Cir. 1993) (quoting *Bennet v. Berg*, 710 F.2d 1361,

1364 (8th Cir.) (en banc), *cert. denied*, 464 U.S. 1008 (1983)).  The Sixth Circuit

has held:

> participation in the conduct of an enterprise's affairs requires
> proof that the defendant participated in the operation or
> management of the enterprise.  RICO liability is not limited to
> those with primary responsibility for the enterprise's affairs;
> only some part in directing the enterprise's affairs is required.
> However, defendants must have conducted or participated in
> the conduct of the *enterprise's* affairs, not just their *own* affairs.

*Ouwinga*, 694 F.3d at 792 (6th Cir. 2012) (citing *Reves v. Ernst & Young*, 507 U.S.

170, 179 (1993) (emphasis in original) (internal quotations and citations omitted)).

This "can be accomplished either by making decisions on behalf of the enterprise

or by knowingly carrying them out."  *Id.* (quoting *United States v. Fowler*, 535

F.3d 408, 418 (6th Cir. 2008)).  Participation, for purposes of RICO, "has a

17

narrower meaning than 'aid and abet.'" *Stone v. Kirk,* 8 F.3d at 1091 (quoting

*Reves*, 507 U.S. at 178).

Defendants argue that there is no evidence that Jose and Stella Evangelista

"ever conducted business in their individual capacity, nor is there any evidence

wherein they undertook any action inconsistent with the corporate form." (ECF

No. 20-1 at Pg ID 208.)  However, Liberty Mutual alleges that Stella and Jose

Evangelista owned and managed Maple Manor and "were responsible for all

actions taken by [Maple Manor] and its staff." (Compl. ¶ 90, ECF No. 1 at Pg ID

18.)  This allegation, which must be accepted as true for purposes of Defendants'

motion, suggests that Stella and Jose Evangelista exercised significant control over

the enterprises' affairs.  As such, Liberty Mutual satisfies the conduct element

required for a RICO claims against the Defendants.

### 4. *Pattern and Continuity Element*

A party asserting a civil RICO violation must show a pattern of racketeering

activity.  To show a pattern of racketeering activity, "a plaintiff must show 'that

the racketeering predicates are related, *and* that they amount to or pose a threat of

continued criminal activity.'" *Heinrich*, 668 F.3d at 409 (emphasis in original)

(citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 237-39 (1989)).

"This requirement has come to be called the 'relationship plus continuity' test." *Id.*

The relationship requirement "of this test is satisfied by showing the predicate acts

have 'similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Id*. (quoting *H.J. Inc.*, 492 U.S. at 240.)  The continuity requirement is satisfied "by showing either a 'close ended' pattern (a series of related predicate acts extending over a substantial period of time) or an 'open-ended' pattern (a set of predicate acts that pose a threat of continuing criminal conduct extending beyond the period in which the predicate acts were performed)." *Id.* at 409-10 (citing *H.J. Inc.*, 492 U.S. at 241-42).

Liberty Mutual states that it is alleging open-ended continuity.  (ECF No. 21 at Pg ID 278.)  Liberty Mutual asserts in its Complaint that Maple Manor submitted false documentation for insurance claims in the ordinary course of business and that this conduct persisted over two years.  (Compl. ¶¶ 84, 101, ECF No. 1 at Pg ID 17, 20; *see also* Ex. 1, ECF No. 1-2 at Pg ID 35-58.)  The alleged facts suggest a possible threat of continuing criminal conduct beyond the period in which the identified predicate acts were performed.  *See H.J. Inc*., 492 U.S. at 242 (noting that "the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business.")  Further, there was no built-in endpoint or foreseeable end to the alleged scheme as claims could have continued to come into Liberty Mutual seeking payment for unlawful treatment of its insureds.  *See State Farm Mut. Auto.*

19

*Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C.*, No. 4:14-CV-11521, 2015

WL 4724829, at *10 (E.D. Mich. Aug. 10, 2015).

### B. Civil RICO Conspiracy Claim

Defendants argue that a RICO conspiracy claim under § 1962(d) fails as a

matter of law because the RICO claim is without merit.  (ECF No. 20-1 at Pg ID

209 (citing *Ashe v. Corley*, 992 F.2d 540, 544 (5th Cir. 1993) (holding that

defendant was not a separate and distinct entity from enterprise.).)  Given the

Court's holding that Liberty Mutual has pled sufficient facts to state an underlying

RICO claim, the Court also concludes that its civil conspiracy survives on this

basis.

### C. State Law Claims

Defendants raise several arguments supporting dismissal of Liberty Mutual's

state law claims against them.  Liberty Mutual alleges common law fraud under

Michigan law against all Defendants.[6]  Defendants argue Liberty Mutual has failed

---

[6] To state a claim of fraud under Michigan law, the plaintiff must allege:

> (1) the defendant made a material representation; (2) the
> representation was false; (3) when the defendant made the
> representation, the defendant knew that it was false, or made it
> recklessly, without knowledge of its truth as a positive
> assertion; (4) the defendant made the representation with the
> intention that the plaintiff would act upon it; (5) the plaintiff
> acted in reliance upon it; and (6) the plaintiff suffered damage.

to plead fraud with the requisite particularity under Federal Rule Civil Procedure

9(b).  (ECF No. 20-1 Pg ID 210.)  In particular, Defendants argue that "[t]he

Complaint fails to identify the particular representation made by any one of the

Defendants.  It does not identify the speaker, where are when the fraudulent

statement(s) were made, or the substance of the fraudulent statements."  (*Id.* (citing

*Indiana State Dist. Council of Laborers Fund v. Omnicare, Inc.,* 583 F.3d 935,

942-43 (6th Cir. 2009).)  As discussed above with respect to Liberty Mutual's civil

RICO claim, Liberty Mutual alleges sufficient facts to state its fraud claim with

particularity.

Liberty Mutual also alleges a claim for payment under mistake of fact

against Maple Manor.  This claim has been described as follows:

> The rule is general that money paid under a mistake of material
> facts may be recovered back, although there was negligence on
> the part of the person making the payment; but this rule is
> subject to the qualification that the payment cannot be recalled
> when the situation of the party receiving the money has been
> changed in consequence of the payment, and it would be
> inequitable to allow a recovery.

*Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717, 729 n.15 (6th Cir. 2006)

(quoting *Gen. Motors Corp. v. Enter. Heat & Power Co.*, 86 N.W.2d 257, 260

(Mich. 1957) (additional quotation marks and citation omitted)).  Defendants seek

---

*Howard v. Chase Home Fin., LLC*, 555 F. App'x 567, 572 (6th Cir. 2014)
(quoting *M & D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 36 (Mich. Ct.
App. 1998)).

dismissal of this claim, arguing that they cannot discern the nature of the allegations, there is no mistake here, and multiple state court judges have rejected this sort of claim.  (ECF No. 20-1 at Pg ID 212.)  Defendants' arguments are waived.  *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n,* 59 F.3d 284, 293–94 (1st Cir.1995) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.")  Accordingly, the Court concludes that Liberty Mutual has adequately pled facts to survive dismissal of its payment under mistake of fact claim.

In its unjust enrichment claim, Liberty Mutual seeks to recover payments it made to Defendants for the treatment of its insured clients.  Under Michigan law, "to sustain a claim of quantum meruit or unjust enrichment, a plaintiff must establish (1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant."  *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 904 (Mich. Ct. App. 2006) (citing *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993)).  However, an unjust enrichment claim is precluded by the existence of an express contract, but only where the contract is "*between the same parties on the same subject matter*."  *Chrysler Realty Co. v. Design Forum Architects, Inc.*, 544 F. Supp. 2d 609, 617 (E.D. Mich. 2008) (emphasis in original) (quoting *Morris*

*Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 903-04 (Mich. Ct. App. 2006));

*see also KSR Int'l Co. v. Delphi Auto. Sys., LLC*, 523 F. App'x 357, 363 (6th Cir.

2013) ("[A] contract will not be implied if there is an express contract between the

same parties on the same subject matter.")

Defendants argue that Liberty Mutual "fail[s] to sufficiently allege that

remedies at law are inadequate or unavailable." (ECF No. 20-1 Pg ID 212 (citing

*Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.,* 65 F.3d 498, 506 (6th Cir.1995)

(finding that the parties entered into an implied-in-fact contract and were thus

precluded additional recovery under the theory of unjust enrichment.) Defendants

fail to develop whether an alternative remedy exists in a contract covering the same

parties on the subject matter. Also, Defendants argue that Jose and Stella

Evangelista never received any individual benefits to support unjust enrichment.

(ECF 20-1 Pg ID 213.) However, it is uncontested that they owned Maple Manor

and presumably would have received a benefit from that ownership. As such, the

unjust enrichment claim survives.

### D. Declaratory Judgment

Count VI of Liberty Mutual's Complaint seeks declaratory judgment under

28 U.S.C. § 2201. Specifically, Liberty Mutual requests a judgment "declaring

that [Maple Manor], Stella Evangelista, and Jose Evangelista, jointly and severally,

fraudulently billed for unlicensed, and therefore unlawful, treatment that is not

compensable under applicable provisions of the Michigan No-Fault Act." (Compl.

¶ 143, ECF No. 1 at Pg ID 28.)  Further, Liberty Mutual asks in its demand for

relief that the Court declare as follows:

> (a) DECLARE that Liberty Mutual has no obligation to pay any pending and previously-denied No-Fault claims submitted by [Maple Manor], Stella Evangelista, and Jose Evangelista, jointly and severally, for any or all of the reasons set out in the within Complaint;

> (b) DECLARE that [Maple Manor], Stella Evangelista, and Jose Evangelista, jointly and severally, cannot seek payment from Liberty Mutual pursuant to the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, et seq., any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the unlawful and fraudulent conduct detailed in the within Complaint;

> (c) DECLARE that [Maple Manor], Stella Evangelista, and Jose Evangelista, jointly and severally, cannot balance bill or otherwise seek payment from any person insured under a Liberty Mutual `y [sic] or for whom Liberty Mutual is the responsible payor related to the unlawful and fraudulent conduct detailed in the within Complaint; and

> (d) GRANT such other relief as this Court deems just and appropriate under Michigan law and the principles of equity.

(Compl., ECF No. 1 at Pg ID 31-32.)

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), imbues authority in the

court to exercise its jurisdiction and discretion in granting declaratory relief, and at

times the better exercise of discretion favors abstention.  *See Bituminous Cas.*

*Corp. v. J & L Lumber Co., Inc*., 373 F.3d 807, 812 (6th Cir. 2004).  The Sixth

Circuit has articulated several factors to be considered by a district court faced with a complaint seeking relief under § 2201(a). *Travelers Indem. Co. v. Bowling Green Pro. Assocs., PLC*, 495 F.3d 266, 271 (6th Cir. 2007) (quoting *Grand Trunk W. R.R. Co. v. Consol. Rail Co.*, 746 F.2d 323, 326 (6th Cir. 1984)).

Defendants' motion to dismiss reiterates the argument that Maple Manor is merely a billing agent which bills on behalf of licensed medical providers and that Liberty Mutual lacks standing under *Sterling*. (ECF No. 20-1 at Pg ID 213-14.) Defendants do not argue for abstention or otherwise argue how Liberty Mutual has failed to state a claim. However, if the Court were to consider the *Grand Trunk* factors, it would conclude that it should exercise jurisdiction over Liberty Mutual's claim for the reasons in a factually similar case in this district. *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 68 F. Supp. 3d 744, 755 (E.D. Mich. 2014).

## VI.    Conclusion

For the reasons set forth above, the Court holds that Liberty Mutual has sufficiently pled its claims in its Complaint against each Defendant to survive a motion to dismiss.

Accordingly,

**IT IS ORDERED**, Defendants' motion to dismiss the Complaint (ECF No. 20) is **DENIED**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: January 10, 2022